UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| Michael Laurer, Board of Trustees Chairman, and William Nix, Board of Trustees Secretary, on behalf of the INDIANA STATE COUNCIL OF CARPENTERS PENSION FUND, *et al.*, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) NO. 2:12-cv-511-PPS |
| WAGONER & SONS CONCRETE, INC. and TIM R. WAGONER, | ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' memorandum in favor of default judgment against Defendant Tim R. Wagoner [DE 14]. After considering their submission, I still find Plaintiffs' conversion claims against Defendant Wagoner are preempted by the Labor Management Relations Act and accordingly **DENY** Plaintiffs' motion for default judgment against Wagoner.

The Plaintiffs are the Indiana/Kentucky/Ohio Regional Council of Carpenters (the "Union" ), and several trustee-fiduciaries who sued on behalf of their respective trust funds (the "Trustee Plaintiffs") to collect delinquent employment contributions owed by Wagoner & Sons Concrete under a collective bargaining agreement between it and the Union Plaintiff [DE1]. They also alleged state law conversion claims against Tim R. Wagoner personally.

The Defendants in this case failed to appear, and Plaintiffs moved for a default judgment in September 2013 [DE 10]. After ordering additional briefing on the issue of Tim Wagoner's personal liability, I granted Plaintiffs' motion for default judgment as to Wagoner & Sons, but denied it as to Wagoner [DE 13]. I denied the motion because Plaintiffs' claims against Wagoner were preempted by Section 301 of the Labor Management Relations Act. At that time, however, Plaintiffs hadn't addressed the preemption issue in their briefing for default judgment, so I thought it only fair to allow them the opportunity to supplement their briefing with a memorandum that squarely addressed the preemption issue. The Plaintiffs have now done this [DE 14].

## DISCUSSION

Federal Rule of Civil Procedure 55(b) governs the entry of default and default judgments. *Lowe v. McGraw-Hill Cos., Inc.*, 361 F.3d 335, 339 (7th Cir. 2004). Courts may consider a number of factors when deciding a motion for default judgment including whether there is a material issue of fact, whether the default is largely technical, whether the plaintiffs were substantially prejudiced, and how harsh an effect a default judgment might have. *See Wolf Lake Terminals, Inc. v. Mut. Marine Ins. Co.*, 433 F. Supp. 2d 933, 941 (N.D. Ind. 2005); *see also* Wright & Miller, Federal Practice and Procedure § 2685 (3d ed.).

Section 301 of the Labor Management Relations Act preempts state law claims that require the interpretation of a collective bargaining agreement. *In re Bentz Metal Products Co.*, 253 F.3d 283, 289 (7th Cir. 2001). Preemption is triggered when a claim is

2

"founded directly on rights created by the collective bargaining agreements," *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987) and when the resolution of the claim depends on the meaning of, or requires the interpretation of, a collective bargaining agreement. *Loewen Group Int'l, Inc. v. Haberichter*, 65 F.3d 1417, 1421 (7th Cir. 1995); *Atchley v. Heritage Cable Vision Associates*, 101 F.3d 495, 499 (7th Cir. 1996) (Preemption occurs when a provision of the CBA is the subject of the dispute or the dispute is substantially dependent upon an analysis of the terms of the CBA).

But claims that merely require reference to the CBA are not preempted. *In re Bentz*, 253 F.3d at 289. Nor are claims preempted when the particular CBA provision is so clear as to preclude any possible dispute over its meaning, when the parties don't dispute the meaning of the relevant CBA provision, or when reference to the CBA is only necessary for computing damages. *Wisconsin Cent., LTD. v. Shannon*, 539 F.3d 751, 758 (7th Cir. 2008).

So the question in this case is whether Plaintiffs' claims against Wagoner are founded directly on a CBA or require the interpretation of the CBA. The answer is yes to both. Plaintiffs allege that Wagoner had a duty to withhold, remit, and report wages and make payments to the trustee funds, and by not doing so, Wagoner converted the wages. Plaintiffs' rights and Wagoner's duties arose directly from the collective bargaining agreements that Wagoner and his company signed. In order to evaluate what those rights and duties were, I will necessarily have to interpret the CBAs. As if to prove the point, Plaintiffs have attached sections of the six CBAs that form the basis of

3

their claims to their memorandum [DE 14-1]. Thus Plaintiffs' state law tort claims for conversion are inextricably intertwined with the terms of the CBAs and the claim is preempted by the Labor Management Relations Act. *See Leu v. Norfolk & Western Ry. Co.*, 820 F.2d 825 (7th Cir. 1987) (holding the Railway Labor Act preempted a state law conversion claim for failure to remit employee benefits); *Shales v. Asphalt Maintenance, Inc.*, No. 03 C 8250, 2004 WL 2191609 (N.D. Ill. Sept. 28, 2004) (holding state law conversion claim for failure to remit union dues was preempted by § 301); *International Assoc. of Heat & Frost Insulators & Allied Workers Local No. 24 v. Chesapeake Firestop Products, Inc.*, 1376-AW, 2012 WL 3137424 (D. Md. July 31, 2012) (same).

Plaintiffs argue that I will not have to rely upon the CBAs for interpretation because they have alleged that Wagoner actually withheld the money from the employees' paychecks. They rely on a case from the Northern District of Illinois, *Construction & General Laborers' District Council of Chicago and Vicinity v. Roth's Reliable Construction Co.*, No. 03 C 7417, 2004 WL 1470269 (N.D. Ill. June 29, 2004), and claim that this case stands for the proposition that the LMRA does not preempt state law conversion claims so long as the plaintiff alleges that the employer actually withheld money from its employees' paychecks and then did not transmit the deductions to the union's designee. The theory is that there is no need to consult the CBA to determine if there was a duty to withhold money because the defendant already demonstrated the existence of the duty by going ahead and withholding the money.

4

I read this case differently than the Plaintiffs do.  The conversion claim in *Roth's Reliable* was not preempted by LMRA because of the allegation about withholding money, but rather because the duty to withhold funds in that case arose from the employee wage assignments and not the collective bargaining agreement.  As the court made clear, "[t]he state law [conversion] claims flow from the wage assignments, not the CBA.  Regardless of whether the CBA was the impetus for the wage assignments, the issue before the court is whether the defendants complied with the wage assignments' terms and conditions." *Roth's Reliable Const. Co.*, 2004 WL 1470269, at *2. In this case, the conversion claims are founded directly on the CBA as evidenced by twenty-six pages of collective bargaining agreements attached to Plaintiffs' memorandum [DE 14-1].  There is no indication anywhere that Wagoner's duty to remit money arose from wage assignments or any other non-CBA source.  Accordingly, Plaintiffs' motion for default judgment as to Defendant Tim R. Wagoner is **DENIED**.

**SO ORDERED**.

ENTERED: August 12, 2014

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
